JAMES BRYANT, Plaintiff-Appellant, v. GLEN OAKS MEDICAL CENTER, f/k/a Glendale Heights Community Hospital, Inc., Defendant-Appellee.

First District (5th Division)   No. 1—93—3498

Opinion filed May 12, 1995.

Kamensky & Rubinstein, of Lincolnwood (Michael G. Erens, Michael P. Greenwald, Marci A. Firfer, and Jeanne G. Toft, of counsel), for appellant.

Ross & Hardies, of Chicago (Robert J. Pristave, Mary Clare Bonaccorsi, and Amy B. Manning, of counsel), for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Dr. James Bryant, appeals from the trial court orders of: (1) March 15, 1993, which: (a) denied defendant, Glen Oaks Medical Center, f/k/a Glendale Heights Community Hospital, Inc.'s motion for summary judgment in its favor on plaintiff's claim for breach of contract; and (b) denied plaintiff's cross-motion for partial summary judgment on his claim for breach of contract; and (2) August 30, 1993, which: (a) granted defendant's renewed motion for summary judgment in its favor on plaintiff's breach of contract claim; (b) denied plaintiff's renewed cross-motion for summary judgment on his breach of contract claim; (c) entered judgment in favor of defendant and dismissed the case with prejudice; and (d) determined that the order was final and that there was no just cause for delaying its enforcement. On appeal, plaintiff contends that the trial court erred in not entering summary judgment for him, but rather for defendant, on his claim for breach of contract.

We affirm.

BACKGROUND

Plaintiff is a board-certified pathologist, duly licensed to practice medicine in the State of Illinois. Defendant is a not-for-profit corporation organized under the laws of the State of Illinois which provides health care services to the public.

In late 1980, plaintiff applied and was accepted to be an active member of defendant's medical staff. At that time, plaintiff was named to the positions of chief pathologist and chairman of

defendant's department of pathology. As chairman of defendant's department of pathology, plaintiff also became a member of the executive committee of defendant's medical staff.

On November 10, 1980, and again in the following year, plaintiff, by and through his professional services corporation, James Bryant, M.D., Ltd., entered into year-long contracts with Glendale Heights Community Hospital, defendant's predecessor, whereupon plaintiff became defendant's director of laboratory services. The contracts provided that either party could terminate the agreement without cause and that "[s]hould either party wish to terminate this agreement, both parties agree to give 30 days notice of their intention." After the expiration of the second contract on November 10, 1982, plaintiff continued, until January 11, 1985, as defendant's director of laboratory services without a formal written contract, but rather pursuant to an informal oral agreement. Both parties concede that after November 10, 1982, the nature of the parties' contractual relationship was under an at-will contract.

As defendant's director of laboratory services, plaintiff provided medico-administrative services to defendant and its patients. Plaintiff's medical staff membership and grant of clinical privileges to perform pathology were governed by a set of bylaws adopted by defendant's medical staff in January of 1984 and later approved by defendant's board of trustees. The bylaws define defendant's medical staff as "the formal organization of all licensed physicians *** who are privileged to attend patients in the hospital." Clinical privileges of persons on defendant's medical staff are defined by the bylaws as "the permission granted to a practitioner to render specific diagnostic, therapeutic, psychiatric, medical, dental, podiatric or surgical services." However, defendant's bylaws also provide that while members of the medical staff who are either employed by defendant or have a contractual relationship with defendant and have medico-administrative duties must be members of the medical staff, "[m]edical staff membership is not contingent on continued employment or contractual arrangement."

In addition, article III, section 2, of the bylaws provides that no member of defendant's medical staff shall have his or her medical staff privileges terminated except in accordance with the bylaws. Article IV, section 1, of the bylaws governing the procedure for hearings and appellate review provides, in pertinent part:

"a. When any practitioner receives notice of a recommendation of the Executive Committee that, if ratified by decision of the governing body, will adversely affect his reappointment to or status as a member of the Medical Staff or his exercise of clinical privileges, he shall be entitled to a hearing ***.

b. When any practitioner receives notice of a decision by the governing body that will affect his reappointment to status as a member of the Medical Staff or his exercise of clinical privileges, and such decision is not based on a prior adverse recommendation by the Executive Committee of the Medical Staff *** the practitioner will then be entitled to an appellate review by the governing body ***."

This section also provides that, in order to exercise the right to a hearing:

"The practitioner requesting such a hearing or appellate review must do so in writing within fifteen 15 days after receipt of notice of governing body action. *** Failure to request a hearing or an appellate review within the specified time period shall constitute a waiver of the practitioner's rights to the same."

Article V, section 1, of the bylaws, provides rules relative to corrective action procedure which state, in relevant part:

"Whenever the activities or professional conduct of any practitioner with clinical privileges are considered to be lower than the standards or aims of the Medical Staff or to be disruptive to the operations of the hospital, corrective action against such practitioner may be requested by any officer of the Medical Staff, by the chief of any service, by the chairman of any standing committee of the Medical Staff, by the president of the hospital, or by the governing body."

The bylaws further state that "hearings provided for in these bylaws are for the purpose of resolving, on an intra-professional basis, matters bearing on professional competency and conduct."

On January 11, 1985, defendant's chief executive officer and president, Mr. Armando A. Chacon, delivered a letter to plaintiff which notified plaintiff of defendant's "intent to terminate [the] contractual relationship" and that on and after January 11, 1985, plaintiff's services to defendant "will not be required." The letter also instructed plaintiff to vacate the director of laboratory services' office and turn in his keys to that office as well as other hospital property in his possession. The letter did not inform plaintiff of the reasons for defendant's decision to terminate its formal contractual relationship with plaintiff. After the letter was delivered to plaintiff on January 11, 1985, plaintiff was free to use the resources of the laboratory *only* at the specific invitation of another physician, and only for a specific consultation for which he might be called. At no time after the letter was delivered to plaintiff did plaintiff request a hearing under the bylaws and no hearing under the bylaws has ever occurred in this case.

Thereafter, defendant entered into an exclusive provider contract

with another pathologist to serve as defendant's director of laboratory services and provide medico-administrative services to defendant and its patients.

On December 18, 1987, plaintiff filed a two-count complaint against defendant. Count I sought damages for breach of contract and alleged that defendant's termination of its contractual relationship with plaintiff violated defendant's bylaws and constituted a breach of contract. It claimed that the bylaws provide that the governing body of defendant shall act on the termination of a staff member only after there has been a recommendation from the medical staff as provided in the bylaws, but defendant's medical staff never made the requisite recommendation of revocation and the governing body never acted on the termination of plaintiff. Count I also asserted that defendant further breached its contract with plaintiff under the bylaws by circumventing the elaborate hearing and appellate review procedure afforded to plaintiff under the bylaws. Count II sought damages for the tort of retaliatory discharge.[1]

On February 1, 1988, defendant filed a motion to dismiss both counts of plaintiff's complaint. Relative to plaintiff's claim for breach of contract, defendant alleged that plaintiff's complaint was legally insufficient because plaintiff did not allege that defendant ever officially terminated plaintiff's medical staff privileges. In addition, defendant averred that even assuming *arguendo* that defendant's bylaws are applicable to plaintiff and create a contract between plaintiff and defendant, plaintiff's complaint is still legally insufficient because it did not allege that defendant ever officially terminated plaintiff's medical staff privileges in violation of the bylaws.

On June 1, 1988, the trial court entered an order which denied defendant's motion to dismiss plaintiff's claim for breach of contract.

Following some interim pleadings, discovery, and orders, on January 9, 1990, plaintiff filed an amended complaint against defendant. The amended complaint again sought damages for breach of contract and averred that defendant's termination of its contractual relationship with plaintiff violated defendant's bylaws and constituted a breach of contract because defendant's medical staff never made a

---

[1]Since plaintiff subsequently withdrew his claim against defendant for retaliatory discharge and the issue presented for review only concerns the propriety of the trial court's rulings regarding plaintiff's claim against defendant for breach of contract, the allegations and relevant information in the record regarding plaintiff's retaliatory discharge claim will not be set forth in this opinion.

recommendation of revocation to the governing body as required under the bylaws and the governing body never acted on the revocation implemented by Mr. Chacon. It also asserted that defendant further breached its contract with plaintiff by circumventing the hearing and appellate review procedure afforded to plaintiff under the bylaws.

On February 21, 1990, defendant filed an answer to plaintiff's amended complaint wherein defendant claimed that the bylaws of the medical staff are irrelevant and inapplicable to the action taken by defendant. In addition, defendant asserted three affirmative defenses to plaintiff's amended complaint. As a first affirmative defense, defendant pointed out that the bylaws provide that a member of the medical staff whose staff privileges are terminated may request a hearing or appellate review of such action upon written notice within 15 days of the adverse action and asserted that because plaintiff has never requested either a hearing or appellate review of the action under the bylaws, plaintiff has waived any right he had to complain of defendant's actions. As a second affirmative defense, defendant averred that plaintiff: (1) in a letter dated April 6, 1985, requested that his staff status be changed from active to consulting; (2) requested that his name be deleted from the medical staff mailing lists; (3) refused to participate in any medical staff events; and (4) refused to pay medical staff dues and, as a result, plaintiff was estopped from complaining that defendant terminated his medical staff privileges on January 11, 1985. As a third affirmative defense, defendant asserted that, as a member of the medical staff, plaintiff was authorized to perform pathology consulting for any patient of defendant at the request of the attending physician, but that plaintiff failed and refused to seek such consults and, instead, plaintiff embarked on a campaign to vilify and denigrate defendant and the physicians practicing as employees of defendant and, as a result, plaintiff failed to mitigate any damages he may have suffered due to any actions taken by defendant.

During discovery, in response to interrogatories, defendant indicated the following reasons for delivering the letter to plaintiff on January 11, 1985, informing plaintiff of its intent to terminate its contractual relationship with plaintiff: (1) plaintiff was charging patients laboratory fees more than those defendant normally charged and the fees charged by plaintiff were not commensurate with the services being performed by plaintiff and, as a result, defendant received numerous complaints from patients and other physicians; (2) plaintiff was frequently unavailable when a surgeon needed pathology work done; (3) plaintiff did not complete his work in a

timely manner; (4) plaintiff was unresponsive as the medical director for defendant's laboratory and when he received complaints from other physicians regarding the pathology laboratory, his usual response was that it was not his responsibility to take care of such matters; (5) plaintiff was unwilling to perform services for public aid patients because State reimbursements were not given with respect to services performed for such patients; and (6) plaintiff had a volatile temper and frequently made outbursts and exhibited unprofessional behavior which was largely responsible for three secretaries leaving.

In his discovery deposition, Mr. Chacon testified that plaintiff's alleged problematic conduct had been brought to his attention on several occasions. He testified that he received many complaints that plaintiff overbilled patients, failed to sign pathology reports in a timely manner, often failed to be present in the hospital, and was often rude and yelled at some of the nursing and professional staff, which allegedly caused the departure of certain staff members from the pathology department. Plaintiff also constantly made negative comments about defendant at a time when defendant was attempting to elevate its image. Mr. Chacon also explained that while it is true that after defendant terminated its contractual relationship with plaintiff on January 11, 1985, plaintiff did not have the unlimited use of the pathology laboratory as he did while the parties' contractual relationship existed, plaintiff still had medical staff privileges and could therefore use the resources of the pathology laboratory while working as a consultant to an attending physician. The difference, according to Mr. Chacon was:

> "[Plaintiff] would not be able to go in there and perform the services as Limited did before, meaning surgical pathology [services], all of these others. That's what the pathologist is for; but as a physician, he could certainly—any portion of that, if he were asked to by another physician."

On July 23, 1992, defendant filed a motion for summary judgment on plaintiff's claim for breach of contract. In its memorandum filed in support of the motion, defendant claimed that because plaintiff's medical staff privileges were not terminated or revoked so as to implicate the review and hearing provision of the bylaws, plaintiff's claim for breach of contract should be summarily dismissed as a matter of law. Defendant also maintained that summary judgment should be granted in its favor because a hospital need not provide a hearing and review to all physicians whose medical staff privileges might be adversely affected by its decision to enter into an exclusive provider arrangement with another physician or entity. In

addition, defendant asserted that plaintiff's claim for breach of contract should be summarily dismissed as a matter of law because plaintiff has waived any right to a hearing or other review under the bylaws because plaintiff failed to make a written request for such review within 15 days of January 15, 1985, as required under the bylaws.

On September 4, 1992, plaintiff filed a cross-motion for summary judgment in his favor on his claim against defendant for breach of contract. In his memorandum filed in support of his cross-motion for summary judgment, plaintiff maintained that, under Illinois law, the bylaws constitute a contract between plaintiff and defendant. Plaintiff further maintained that when, on January 11, 1985, plaintiff's services as defendant's director of laboratory services were terminated by defendant, his exclusion from the laboratory and his office constituted the effective termination of his clinical privileges and effective revocation of his membership on defendant's staff. Plaintiff claimed that defendant's revocation of plaintiff's clinical privileges effected by his exclusion from the laboratory and office violated several provisions of the bylaws. Plaintiff asserted that in accordance with the bylaws, a medical staff recommendation and governing body action must occur before the revocation of staff privileges and that defendant's failure to follow the bylaws obviated any obligation on the part of plaintiff to request a hearing or appellate review under the bylaws. Plaintiff pointed out that no such medical staff recommendation or governing body action occurred prior to the revocation of plaintiff's privileges and maintained that, in the absence of a medical staff recommendation, governing body action and effective notice thereof, defendant was in breach of contract and, as a result, plaintiff was entitled to judgment as a matter of law.

At a hearing wherein the parties argued their respective renewed motions for summary judgment, the trial court made the following ruling:

> "[T]he contract is terminable at will. And to say that *** that interference requires a hearing gives him actually a cause, determination, and condition of his contract where it's terminable at will. I don't know that that's the intention of the parties at all.
>
> And I'm not sure that decency or fairness requires that kind of resolution. So for all those reasons, I'm going to enter summary judgment in favor of defendant."

On August 30, 1993, the trial court entered an order which announced its ruling: (1) granting defendant's renewed motion for summary judgment in its favor; (2) denying plaintiff's renewed motion for summary judgment in his favor; (3) dismissing the case with preju-

dice; and (4) entering final judgment in favor of defendant. On September 28, 1993, plaintiff filed a timely notice of appeal.

OPINION

I

The sole issue which plaintiff raises for review is the propriety of the trial court's respective orders of March 15, 1993, and August 30, 1993, determining that plaintiff was not entitled to summary judgment in his favor, and the trial court's order of August 30, 1993, determining that defendant was entitled to summary judgment in its favor.

Plaintiff contends that defendant's bylaws constituted a contract between plaintiff and defendant and that defendant breached the contract when it terminated its contractual relationship with plaintiff on January 11, 1985, without providing him a hearing under the bylaws. Plaintiff argues that from the point at which Mr. Chacon delivered him the letter indicating defendant's intent to terminate its contractual relationship with him as defendant's director of laboratory services and instructing him to vacate his office and return any hospital property in his possession, his medical staff privileges were effectively revoked or, at a minimum, reduced and such a change in his medical staff privileges triggered the hearing and review provisions of the bylaws. In so arguing, plaintiff cites *Lewisburg Community Hospital v. Alfredson* (Tenn. 1991), 805 S.W.2d 756, 761-62, wherein the supreme court of Tennessee held that by terminating a radiologist's exclusive agreement with the hospital and thereafter refusing to give him access to its radiological equipment and staff, the hospital breached its bylaw contract with the radiologist by refusing to provide him a fair hearing.

Plaintiff further contends that because defendant effectively terminated or reduced his clinical privileges for reasons relating to his professional conduct, defendant's actions directly invoked the relevant provisions of peer review protection in the bylaws. Plaintiff argues that discovery revealed that the reasons for defendant's action in delivering the letter through Mr. Chacon on January 11, 1985, were based on plaintiff's alleged unprofessional and disruptive conduct. Plaintiff posits that, in accordance with Illinois law, the hospital specifically chose to subject physicians to the scrutiny and initial discipline of their peers with respect to matters of professional conduct and that because the reasons given by defendant for taking action against him on January 11, 1985, have potentially negative ramifications for the quality of health care, they fall squarely within

the purview of the bylaws. In so arguing, plaintiff directs our attention to cases from other jurisdictions which he maintains hold that a hospital may terminate an exclusive contract with a specialist without triggering the relevant hearing and review provisions in the bylaws if the reasons for doing so were solely economic and unrelated to the physician's professional competency. See *Dutta v. St. Francis Regional Medical Center, Inc.* (1994), 254 Kan. 690, 693-98, 867 P.2d 1057, 1060-63; *Bartley v. Eastern Maine Medical Center* (Me. 1992), 617 A.2d 1020, 1022-23; *Holt v. Good Samaritan Hospital & Health Center* (1990), 69 Ohio App. 3d 439, 443-46, 590 N.E.2d 1318, 1321-23; *Engelstad v. Virginia Municipal Hospital* (8th Cir. 1983), 718 F.2d 262, 266-69; *Anne Arundel General Hospital v. O'Brien* (1981), 49 Md. App. 362, 370-74, 432 A.2d 483, 488-90.

In Illinois, as a general rule, summary judgment is to be encouraged as an aid to the expeditious disposition of a lawsuit. (See *Lavat v. Fruin Colnon Corp.* (1992), 232 Ill. App. 3d 1013, 1023, 597 N.E.2d 888.) A movant may only be granted summary judgment where all of the pleadings, discovery materials, admissions, and all permissible inferences, analyzed in the light most favorable to the nonmovant, so clearly favor the movant that no fair-minded individual could dispute the movant's right to judgment in his or her favor. (See *Lavat*, 232 Ill. App. 3d at 1022.) On appeal, the trial court's decision to grant summary judgment will be affirmed only if, after examining the record, there is no genuine issue of material fact and the movant was entitled to judgment as a matter of law. (See *Lavat*, 232 Ill. App. 3d at 1022.) A reviewing court may sustain the decision of the trial court on any grounds called for by the record, regardless of whether the trial court made its decision on a proper ground. (See *National Bank v. Westinghouse Electric Corp.* (1992), 235 Ill. App. 3d 697, 703-04, 600 N.E.2d 1275.) Since the parties agree that the facts of this case are undisputed, we need only determine whether the trial court correctly determined that defendant was entitled to judgment as a matter of law on its claim that, based on all of the pleadings and discovery materials, plaintiff was not entitled to a judgment in his favor on his claim for breach of contract. For the following reasons, we hold that the trial court correctly determined that defendant was entitled to judgment as a matter of law on its claim that plaintiff had not established a case for breach of contract.

●1 We conclude, as did the trial court, that because the parties were operating pursuant to an at-will contractual relationship which was subject to termination by either party without cause, the hearing and review provisions of the bylaws were not implicated by defendant's termination of that relationship. It is true that, under Il-

linois law, the bylaws constitute a contract between defendant and the members of its medical staff. (See *Head v. Lutheran General Hospital* (1987), 163 Ill. App. 3d 682, 691, 516 N.E.2d 921.) However, the record in the present case reveals, and the parties agree, that from November 10, 1980, until defendant terminated its contractual relationship with plaintiff as defendant's director of laboratory services on January 11, 1985, the parties operated pursuant to an at-will contract, separate from the bylaw contract, which could be terminated by either party without cause. In our view, the trial court correctly determined that to imply a hearing requirement into that contractual arrangement would be to rewrite it to include a condition which the parties did not bargain for.

We find that defendant's reliance on cases from other jurisdictions for the proposition that a hospital may terminate an exclusive contract with a specialist only if the reasons are purely economic and wholly unrelated to the physician's competency is misplaced. Those cases either hold that: (1) the rationale which provides a physician with due process rights is inapplicable where an exclusive contract is involved because the nature of such contracts are that they may unilaterally be terminated by either party without cause unless the parties specifically contract otherwise (see *Holt*, 69 Ohio App. 3d at 443-44, 867 P.2d at 1320-21; *Engelstad*, 718 F.2d at 266; *Anne Arundel*, 49 Md. App. at 370-74, 432 A.2d at 488-89); or (2) that the hospital's bylaws were not implicated because the physician's medical staff privileges were not reduced or revoked when the hospital terminated an at-will contract (see *Dutta*, 254 Kan. at 697-98, 867 P.2d at 1062-63; *Bartley*, 617 A.2d at 1022-23; *Holt*, 69 Ohio App. 3d at 446, 590 N.E.2d at 1323; *Engelstad*, 718 F.2d at 268-69). Also, in our view, the facts of *Lewisburg* are inapposite; further, its rationale is not persuasive. See *Dutta*, 254 Kan. at 697, 867 P.2d at 1062.

Plaintiff cites *Holt* (69 Ohio App. 3d at 443-46, 590 N.E.2d at 1321-23) and *Anne Arundel* (49 Md. App. at 370-74, 432 A.2d at 488-90). We note, however, that the court of appeals of the State of Ohio and the court of special appeals of the State of Maryland, respectively, concluded that because "the rationale which provides a physician with procedural due process rights is simply inapplicable where an exclusive contract is involved," the hearing and review provisions of a hospital's bylaws were not implicated when a hospital terminated its at-will contract with the respective physicians in those cases in order to enter into an exclusive provider arrangement with another physician or organization. (See *Holt*, 69 Ohio App. 3d at 443-44, 590 N.E.2d at 1320-21; *Anne Arundel*, 49 Md. App. at 370-74, 432 A.2d at 488-89.) We also note that, in *Engelstad*, the United States Court of

Appeals for the Eighth Circuit applied Minnesota law to conclude that because a pathologist's contractually derived position as director of a hospital's department of pathology was terminable at will, he did not have a protected property interest in that position sufficient to trigger a procedural due process hearing. (See *Engelstad*, 718 F.2d at 266.) We find *Holt*, *Anne Arundel*, and *Engelstad* to be persuasive and, as in those cases, we hold that because of the at-will nature of the parties' contractual relationship, defendant could unilaterally terminate plaintiff's contractually derived position of defendant's director of laboratory services without triggering the hearing and appellate review provisions of the bylaws.

■ However, even if we were to assume *arguendo* that the hearing and appellate review provisions of the bylaws could have become applicable in the instant case, we conclude that the bylaws were not implicated because plaintiff's medical staff privileges were not revoked or, at a minimum, reduced. Plaintiff fails to appreciate the distinction between his medical staff privileges and his ability to provide pathology services with the free and unfettered right to use the pathology laboratory. The granting of medical staff privileges merely demonstrates the hospital's determination that a physician's credentials are such that he or she is qualified to practice medicine at the hospital, but does not guarantee concurrent employment. (See *Dutta*, 254 Kan. at 697, 867 P.2d at 1063; *Bartley*, 617 A.2d at 1022-23; *Holt*, 69 Ohio App. 3d at 446, 590 N.E.2d at 1323; *Engelstad*, 718 F.2d at 267-68; *Adler v. Montefiore Hospital Association* (1973), 453 Pa. 60, 81, 311 A.2d 634, 645.) The Seventh Circuit Court of Appeals explained that distinction as follows:

> "Staff privileges reflect the hospital's decision that a physician is qualified to practice in the facility, but do not in and of themselves confer employment. Employment as a pathologist at St. John's was determined by the legal contract between St. John's and [the exclusive contractor]. [Citation.] Although without concurrent employment by St. John's as a pathologist these staff privileges may be of little or no value to Dr. Collins, the fact remains that the privileges were neither removed nor reduced." *Collins v. Associated Pathologists, Ltd.* (7th Cir. 1988), 844 F.2d 473, 481.

See also *Gonzalez v. San Jacinto Methodist Hospital* (Tex. Ct. App. 1994), 880 S.W.2d 436, 439-40.

Although plaintiff cites *Lewisburg*, we, as previously stated, conclude that *Lewisburg* is distinguishable. The defendant in *Lewisburg* unconditionally barred the plaintiff from using *any* of the hospital's radiological facilities, equipment, resources, or staff in derogation of a specific clause in the parties' contract which provided

that "termination without cause *** shall not cause automatic termination of staff appointment for either contractor, his employees or subcontractors." (*Lewisburg*, 805 S.W.2d at 757 n.1.) The only apparent medical staff privilege which the plaintiff retained was the permission to attend medical staff meetings. (See *Lewisburg*, 805 S.W.2d at 758.) On appeal to the supreme court of Tennessee, defendant maintained that the decision to exclude a physician from its medical staff was a managerial decision solely within the discretion of its governing body, and that private hospitals may exclude licensed physicians from their medical staff for any reason deemed sufficient by the governing body. (See *Lewisburg*, 805 S.W.2d at 758.) In rejecting this argument, the court observed that defendant specifically contracted that even if defendant terminated plaintiff's position as exclusive provider of radiological services, it would not exclude plaintiff from its medical staff and noted that "[h]ad [defendant] not made that business decision, [plaintiff] would have no claim for breach of contract." (*Lewisburg*, 805 S.W.2d at 759.) The court also held that by "grant[ing] privileges, but later affirmatively barr[ing] Alfredson from using *any* Hospital radiological facilities *or* staff," without granting the plaintiff a fair hearing under its bylaws, the defendant wrongly revoked the plaintiff's medical staff privileges in violation of the parties' formal contractual relationship as well as the bylaws. (Emphasis added.) *Lewisburg*, 805 S.W.2d at 760-61.

Here, unlike in *Lewisburg*, defendant, upon terminating its at-will contractual relationship with plaintiff, did not unconditionally bar plaintiff from using *any* of defendant's pathology equipment, facilities, resources, or staff, in derogation of its contract with plaintiff, but rather terminated its at-will contract with plaintiff as *defendant's director of laboratory services*. Although it necessarily follows that defendant's termination of its contractual relationship with plaintiff as defendant's director of laboratory services meant that plaintiff lost the *free* and *unconditional* access to the pathology equipment, facilities, and resources in the laboratory, the record reveals that plaintiff remained on defendant's medical staff and could access these resources at the specific invitation of an attending physician on defendant's staff.

■ Moreover, even if we were to assume *arguendo* that plaintiff's right to a hearing under the bylaws was implicated by defendant's actions, we conclude that any such right was waived by plaintiff. The bylaws specifically provide that the failure of a practitioner to request a hearing and appellate review to which he is entitled within 15 days "after receipt of notice of governing body action *** shall constitute a waiver of the practitioner's rights to the same." In the present case,

it is undisputed that plaintiff did not request a hearing within the time and manner provided by the bylaws. As a result, assuming *arguendo* that plaintiff's rights under the bylaws were implicated by defendant's action in terminating its contractual relationship with plaintiff as defendant's director of laboratory services, he has waived any right he may have had to the hearing and review procedures of the bylaws.

For all of the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.