Rosario J. BOISVERT

v.

**TRUSTEE OF GHR TRUST, et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 19, 1991.

Decided April 15, 1992.

Robert B. Woodman, Woodman & Edmands, Biddeford, for plaintiff.

Allen J. Hrycay, Reef, Jordan, Hrycay & Sears, Portland, for defendant.

Before McKUSICK, C.J.,* and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

* McKusick, C.J. sat at oral argument and participated in the initial conference, but retired before this opinion was adopted.

CLIFFORD, Justice.

In an action arising from an unconsummated real estate transaction, Norman S. Reef, Trustee of GHR Trust, the Estate of Robert M. Zalko, and the Portland Five, Inc., appeal from a summary judgment in favor of the plaintiff, Rosario J. Boisvert, entered in the Superior Court (York County, *Fritzsche, J.*). The judgment awarded to Boisvert represented a $10,000 deposit Boisvert had paid to the defendants as earnest money. We affirm the judgment.

In September 1988, Boisvert, the buyer, entered into a purchase and sale agreement with GHR Trust and the Estate of Robert M. Zalko, the sellers, to purchase a parcel of land on Route 1 in Saco. Pursuant to the agreement, Boisvert paid to the Portland Five, Inc., acting as broker for the sellers, a $10,000 deposit toward the purchase price. Paragraph 3 of the agreement provides in pertinent part:

> On the date of closing, Seller shall deliver to Buyer a good and sufficient deed, showing good and merchantable title. However, should the title prove defective, the Seller shall have reasonable time after due notice of such defect or defects, to remedy the title; after which time, if such defect or defects are not corrected so that there is merchantable title, then the Buyer may, at its option, be, relieved from all obligations under this agreement and obtain a refund of any portion of the purchase price paid, including but not limited to the deposit of Ten Thousand Dollars ($10,000.00). Buyer shall have forty-five (45) days to notify Sellers in writing of any defects of record as of that date. Any defects not contained in said notice shall be deemed to have been waived.

Paragraph 14, entitled REPRESENTATION AND WARRANTIES OF SELLER, provides in part:

> As a material inducement to the Buyer to enter into and perform its obligations pursuant to this contract, the Seller here-

by represents and warrants to the best of their knowledge:

....

b. Seller has good and marketable title to the property.

Paragraph 15, labeled CONDITION TO THE OBLIGATION OF BUYER, provides:

The obligation of the Buyer to perform its undertakings pursuant to this contract is expressly conditioned on the truth and accuracy of each of the foregoing representations and warranties of the Seller at the time of closing, and in the event that any of the foregoing representations or warranties are discovered not to be true at or before the time of closing, then Buyer shall have no further obligations under this contract and the Seller shall refund the Buyer's down payment.

The agreement called for a closing on or before 90 days from the date of the agreement (September 19, 1988). The parties later agreed to extend the time for closing to January 6, 1989. Boisvert's attorney did not hear from defendants' counsel regarding the January 6 closing, and on that date, sent a letter requesting a thirty-day extension, or in the alternative, a reasonable notification of the time and place for closing, and an indication that the sellers were prepared to close the transaction. The attorney for defendant-sellers told Boisvert's attorney that the sellers wanted to close the transaction during the week of January 16, 1989, but would grant an extension of thirty days if an additional $10,000 deposit were paid. Boisvert declined to pay an additional $10,000 deposit and, through his attorney indicated that it would not be necessary for the sellers' attorney to prepare documents over the weekend of January 14–15 for a closing during the week of January 16, 1989. On January 18, 1989, the attorney for the defendants sent a letter to Boisvert's attorney stating that the contract had expired and the sellers were placing the property back on the real estate market.

Boisvert brought this action seeking return of the $10,000 deposit. Both parties moved for summary judgment. *See* M.R.Civ.P. 56. The Superior Court concluded as a matter of law that the defendants were in breach of Paragraph 14(b) of the agreement from the outset because they did not have title to the property on the date of the agreement and never acquired title until April of 1989. Accordingly, the court concluded that Boisvert was entitled to a return of his deposit. This appeal followed.

Paragraphs 14 and 15 of the agreement are unambiguous. Defendants do not contend that they are ambiguous. The interpretation of unambiguous language in a contract is a question of law for the court. *Pelletier v. Jordan Assocs.*, 523 A.2d 1385, 1386 (Me.1987). Because the meaning of an unambiguous contract must be decided from the plain meaning of the language used without resorting to extrinsic evidence, *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me.1983), we review the Superior Court's interpretation *de novo* as a question of law. Our review leads us to a conclusion identical to that of the Superior Court.

According to Paragraph 14 of the purchase and sale agreement, the sellers expressly represented as a material inducement to Boisvert to enter into the contract that they held good and marketable title to the property at the time of the signing of the agreement. Paragraph 15 provides that Boisvert's obligation to perform under the contract is expressly conditioned on the truth and accuracy of the sellers' representations and warranties and, "in the event that any of the foregoing representations or warranties are discovered not to be true at or before the time of closing, then [Boisvert] shall have no further obligations under this contract and the Seller[s] shall refund [Boisvert's] down payment."

Therefore, Boisvert's obligations to perform under the contract were expressly conditioned on the truth and accuracy of the sellers' representations and warranties, including their representation that they had good and marketable title to the property at the time the agreement was signed. It is undisputed that the sellers did not have title to the real estate at the time the

agreement was signed. Nor did they have title at the time of their letter to Boisvert on January 18th.[1] Pursuant to Paragraph 15, Boisvert had no further obligation under the contract.

We are unpersuaded by defendants' assertion that Boisvert waived the right to allege any title defect by failing to comply with the terms of Paragraph 3. We agree with the Superior Court that in the context of this Agreement, Paragraph 3 does not apply to a total absence of title as is present here, but rather to defects in title. To construe Paragraph 3 as applying to more than defects in title, such as encumbrances and liens, would be to render meaningless the absolute warranty set out in Paragraph 14 and the conditions of Para-

graph 15. *See Benedix v. Boston Old Colony Ins. Co.*, 417 A.2d 453, 455 (Me.1980) (when construing a contract, agreement as a whole must be looked to). On the facts of this case, Boisvert is entitled to a refund of his down payment.

The entry is:

*Judgment affirmed.*

All concurring.

---

1. Defendant Norman S. Reef held title to an undivided one-half interest in the property in his individual capacity, not as trustee of the GHR, the capacity in which he signed the purchase and sale agreement. Moreover, title to a fifty-foot strip of property is in serious doubt because of a prior conveyance by Zalko and by Reef as an individual that on its face conveys at least a portion of the subject property to a third party. Sellers submitted no affidavit that disputed these facts.