**John BARTLEY, et al.**

v.

**EASTERN MAINE MEDICAL CENTER.**

Supreme Judicial Court of Maine.

Argued Nov. 5, 1992.

Decided Dec. 14, 1992.

Paul F. Macri (orally), Berman & Simmons, P.A., Lewiston, for plaintiffs.

John P. Doyle (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Plaintiffs, four doctors who practice emergency medicine, appeal from a summary judgment entered by the Superior Court (Penobscot County, *Pierson, J.*) in favor of Defendant Eastern Maine Medical Center (EMMC). The doctors contend that the court erred in entering summary judgment for EMMC, and argue that they are entitled to a judgment as a matter of law because EMMC breached its contract with them. Finding no error, we affirm the judgment.

For more than ten years the Plaintiffs provided physician services in EMMC's emergency department pursuant to a contract the hospital had with Bridges, Emmet & Rosenberg, a group with which each of the Plaintiffs was associated. In accordance with procedures established by the hospital's Medical Staff Bylaws, each Plaintiff was granted, and continues to hold, membership on the medical staff and each has staff privileges, enabling him to practice emergency medicine at EMMC. In 1989, in order to reduce its operating expenses, EMMC terminated its contract with Bridges, Emmet & Rosenberg[1] after unsuccessfully attempting to negotiate an alternative compensation arrangement with them.[2] EMMC contracted with a different group of emergency physicians resulting in a compensation arrangement more favorable to the hospital. Subsequently, the hospital decided to directly contract with emergency room physicians and notified Plaintiffs they could no longer work in the emergency department unless they negotiated employment contracts with EMMC. Plaintiffs' staff privileges, however, were not expressly terminated when the hospital made different arrangements for staffing the emergency department.

Plaintiffs filed suit in the Superior Court on the basis that the approval of their staff privileges established a contract between them and the hospital. They assert that this contract, arising from the staff privileges granted to them pursuant to the Medical Staff Bylaws, gives them a right to practice medicine in the emergency department, a right that is not contingent on a separate employment contract with EMMC. According to Plaintiffs, EMMC breached the contract arising out of their staff privileges when the hospital required them to enter into a separate employment contract in order to exercise their privileges in the emergency department. Plaintiffs allege that this requirement works a constructive revocation of their privileges.

Both parties filed motions for a summary judgment in the Superior Court. After a hearing, the trial court found there was no genuine issue of material fact and concluded that EMMC was entitled to a judgment as a matter of law. The court agreed with Plaintiffs that a contract arose out of the granting of staff privileges and that the terms of this contract were contained in the Medical Staff Bylaws. The court, however, did not agree that the contract terms included the right to practice medicine in the emergency department of the hospital without an employment arrangement with the hospital. This appeal followed the entry of a summary judgment for EMMC. Viewing the evidence in a light most favorable to the party against whom judgment has been entered, we review the trial court's conclusions for errors of law. *Estate of Althenn v. Althenn*, 609 A.2d 711, 714 (Me.1992).

▮ We agree with Plaintiffs that the bylaws of a private medical center may constitute an enforceable contract between the medical center and its staff physicians. *Bhatnagar v. Mid–Maine Medical Ctr.*, 510 A.2d 233, 234 (Me.1986). The Medical Staff Bylaws at issue here contain several provisions relied on by Plaintiffs to support their contention that EMMC has breached its contract with them. In a section describing the various categories of the medical staff, the bylaws define the "active medical staff" as those physicians "who have been selected to transact the business of the medical staff, including voting and

---

1. Plaintiffs do not dispute that the hospital properly terminated the contract with Bridges, Emmet & Rosenberg.

2. In 1983 the Maine Legislature, recognizing the significant increase in the cost of hospital care, created the Maine Health Care Finance Commission and authorized it to set limits on the gross revenues realized by hospitals. *See* 22 M.R.S.A. §§ 381, 396 (1992). Following the creation of the Commission, EMMC, along with other Maine hospitals, looked for ways to reduce operating expenses. The contract EMMC had with Bridges, Emmet & Rosenberg was very costly to the hospital. After failing to negotiate a new contract with Bridges, Emmet & Rosenberg, EMMC contracted with a different group and subsequently concluded that the most efficient approach was to contract with emergency room physicians individually. EMMC invited Plaintiffs to discuss the possibility of individual employment contracts but they declined, although other physicians formerly associated with Plaintiffs' group have contracted with EMMC.

holding office, as well as to attend service [patients] and private patients.... The active staff must maintain clinical privileges."[3] Art. IV, § D. Another section of the bylaws discusses the terms of appointment to the medical staff. Here Plaintiffs point to the factors to be taken into account when a physician is under consideration for reappointment to the staff, including "maintenance of timely, accurate, and complete medical records" and "patterns of care as demonstrated by reviews and evaluations." Art. III, § C(2). They also refer to a provision which states that continuation of staff membership shall not be made contingent on the continuance of an employment contract. Art. III, § C(5).

■ The Plaintiffs use these isolated provisions in the bylaws to support the position that the grant to them of staff privileges confers on them an absolute right to practice in the emergency department. Viewed as a whole, however, as a contract must be construed, *Boisvert v. Trustee of GHR Trust*, 605 A.2d 939, 941 (Me.1992); *Benedix v. Boston Old Colony Ins. Co.*, 417 A.2d 453, 455 (Me.1980), the bylaws confer no such right.

While it may be true that the Medical Staff Bylaws contemplate that the active staff will treat patients, the preamble to the bylaws clearly states that the medical staff assume their responsibilities "subject to the authority of the hospital board of trustees." The authority of the board is set forth in the Bylaws of the Eastern Maine Medical Center (hereinafter "corporate bylaws") which provide that "[t]he general management of the affairs of [EMMC] shall be vested in a board of trustees." Art. V, § 1. The corporate bylaws also provide for a president who shall be the chief executive officer and "shall have the necessary authority and responsibility to operate [EMMC] in all of its activities." Art. VI, § 5. They further provide for a medical director, appointed by the board, who is responsible "for maintaining and improving the quality of medical practice at the medical center." Art. VI, § 6. In addition, the corporate bylaws require the board to appoint chiefs of service who, under the Medical Staff Bylaws, are given broad authority to supervise their individual departments. The emergency department is one of many departments that has a chief of service, reporting to the medical director.

It is clear from these bylaw provisions that the board of trustees, acting through the president and medical director, has the authority to manage all the affairs of the hospital. This would necessarily include decisions on how to operate individual departments in order to best serve the corporation's purposes of "car[ing] for ill or disabled persons ... and ... promot[ing] community health." Art. II, § 2. The cost of such care and promotion of community health is vitally important to the community and a legitimate concern for the board. *See* 22 M.R.S.A. § 381 (1992) (findings and purposes of law creating Maine Health Care Finance Commission revealing concern for rapidly rising costs of hospital care and goal to limit same). In the case of the emergency department, the board determined that the contract with the Plaintiffs' group was too costly and that directly employing physicians is the most cost efficient approach to providing emergency services.[4] The bylaws confer authority on the board to make such a decision, and the bylaw provisions relied on by the Plaintiffs do not restrict that authority. Indeed, the Medical Staff Bylaws are subject to it.

■ We also do not agree with Plaintiffs' contention that their staff privileges have been constructively revoked by EMMC's requirement of an employment contract. The granting of privileges signifies that a doctor is qualified to practice at the hospital.[5] EMMC has determined that

---

3. Plaintiffs are members of the active medical staff with clinical privileges in the emergency department. A "service patient" is someone who does not have a physician on entering the hospital.

4. *See supra* note 2.

5. The Medical Staff Bylaws specifically provide that a doctor's training, experience, competence and standing in his field are to be considered when an application for staff privileges has been made. Art. III, § D(3).

each of the Plaintiffs is qualified, and that determination is embodied in the staff privileges they have been granted. The right to exercise the privileges, however, is a separate matter. *Engelstad v. Virginia Mun. Hosp.*, 718 F.2d 262, 268 (8th Cir. 1983); *Holt v. Good Samaritan Hosp. & Health Ctr.*, 69 Ohio App.3d 439, 590 N.E.2d 1318, 1323 (1990). For some physicians, such as general practitioners, the granting of staff privileges may be all that is necessary in order for the physician to treat his own patients in the hospital. For other doctors whose practice is entirely hospital-based, such as emergency room physicians, additional arrangements with the hospital may be required.

█ Because their staff privileges have not been constructively revoked or significantly reduced, Plaintiffs are not entitled to invoke the notice and hearing provisions of the Medical Staff Bylaws. *Engelstad*, 718 F.2d at 268; *Holt*, 590 N.E.2d at 1323.[6] These procedures are available to a physician who is facing "major corrective action." Under the bylaws corrective action may be instituted when a doctor's conduct falls below an acceptable standard or when there is a recommendation that a physician's privileges be reduced. Art. III, §§ D(5) & E(1)(a). EMMC has never suggested that the professional conduct of any of the Plaintiffs is unacceptable nor has there been a recommendation that their privileges be reduced. Therefore, no corrective action has been initiated with respect to Plaintiffs, and the notice and hearing provisions of the bylaws do not apply.

Because the language of the Medical Staff Bylaws does not confer on the Plaintiffs any right to practice medicine in the EMMC emergency department, and because the Plaintiffs are not entitled to notice and a hearing under the bylaws, the Superior Court correctly concluded that EMMC did not breach the contract and is entitled to a judgment as a matter of law.

6. Although there is authority to the contrary, we are unpersuaded by the reasoning of those cases. *See, e.g., Lewisburg Community Hosp. v. Alfredson*, 805 S.W.2d 756, 761 (Tenn.1991)

The entry is:

Judgment affirmed.

All concurring.

(hospital's refusal to give doctor access significantly reduced his privileges and doctor entitled to hearing under bylaws).