No. 67,446

S. SAKUNTALA DUTTA, M.D., *Appellee*, v. ST. FRANCIS REGIONAL
MEDICAL CENTER, INC., *Appellant*.

(867 P.2d 1057)

Opinion filed January 28, 1994.

*Richard C. Hite*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause, and *Charles E. Hill*, of Wichita, was with him on the briefs for appellant.

*Eric B. Metz*, of Triplett, Woolf & Garretson, of Wichita, argued the cause, and *John P. Woolf*, of the same firm, was with him on the briefs for appellee.

*Ronald Williams*, of Morrison & Hecker, of Wichita, *Paul G. Gebhard*, *Barry Sullivan*, and *Jeffrey T. Shaw*, of Jenner & Block, of Chicago, Illinois, and *Thomas W. Greeson*, of The American College of Radiology, of Reston, Virginia, were on the brief for *amici curiae* The American College of Radiology and The Kansas Medical Society.

*Jeffrey O. Ellis* and *Laura J. Bond*, of Lathrop & Norquist, of Overland Park, and *Thomas L. Bell*, of The Kansas Hospital Association, of Topeka, were on the brief for *amicus curiae* The Kansas Hospital Association.

The opinion of the court was delivered by

SIX, J.: This case arises from an employment contract dispute between an oncological radiologist and the St. Francis Regional Medical Center in Wichita (St. Francis). The jury awarded the radiologist, S. Sakuntala Dutta, M.D., $552,756 as damages for loss of income due to the breach by St. Francis of a written employment contract. The hospital appealed.

The trial court granted the hospital's motion for summary judgment, finding that Dutta was not entitled to a due process hearing under provisions of the hospital's medical staff bylaws. Dutta cross-appealed the due process ruling.

The Court of Appeals set aside the verdict and remanded for a new trial on the damage issue. Trial court rulings and the jury verdict as to all other issues were affirmed. We granted Dutta's petition for review of the two issues now before us: (1) damages, and (2) the denial of a due process hearing. We affirm the Court of Appeals on the due process hearing issue. Justice McFarland has recused. The judgment of the Court of Appeals reversing the district court on the damage issue is affirmed by an equally divided court.

## Facts
We recite the facts as stated by the Court of Appeals:

"Dutta is a radiologist who began working in the radiology department of the hospital July 1, 1987, as an employee of Dr. Maurice Krause, the medical director of the hospital's radiology department. The hospital terminated Dr. Krause's employment as medical director on August 5, 1988, but encouraged Dutta to remain with the hospital. On August 8, 1988, Dutta and the hospital entered into a written employment contract with a primary term of 90 days. If a new medical director had not been hired by the hospital within the 90-day period, the agreement was to be automatically extended for a second 90-day period.

"Following a period of recruitment and interviews, the hospital offered Dr. Donald Tan the position of medical director of the radiology department on October 5, 1988. Dr. Tan and the hospital executed a contract on April 24, 1989, making Dr. Tan the medical director of the radiology department. The contract granted Dr. Tan the right 'to provide radiation oncology services on an exclusive basis' subject to the exception of allowing Dutta to continue her practice of radiation oncology at the hospital. On April 24, 1989, the hospital notified Dutta the 90-day contract had expired and Dr. Tan was the new medical director. The letter provided in part:

'It is our intent at this time to establish an exclusive contract with Dr. Donald C-S Tan for medical direction and radiation therapy services at

SFRMC. Your medical staff privileges to practice radiation therapy at SFRMC will not be affected by this action. You will be allowed to maintain your current office space for radiation oncology activities; however, you should make alternative arrangements for your billing and collection activities.'

"Dutta and Dr. Tan practiced independently of each other in the same facility, but Dr. Tan was unhappy with this arrangement. Dr. Tan requested exclusive privileges on October 13, 1989, stating he could not continue as medical director without exclusivity.

"An exclusive contract was authorized by the hospital and Dutta was notified on February 2, 1990, she would not be permitted to provide radiation therapy services at the hospital after May 1. By letter, Dutta twice requested a hearing on the hospital's decision to revoke her right to use hospital facilities. Both requests were denied.

"Dutta's last day at the hospital was May 1, 1990. Just before she left the hospital, she began working two days per week at a hospital in Halstead. While at Halstead, Dutta learned of an opening at the Hutchinson Clinic in Hutchinson. Dutta interviewed for the position and agreed to work three days a week at the clinic. Dutta signed an agreement with the Hutchinson Clinic on June 18, 1990. Sometime in August of 1990, she terminated her employment at Halstead. Dutta worked full time at the Hutchinson Clinic from August of 1990 through June of 1991. At that time, although her work had been satisfactory, the Hutchinson Clinic replaced Dutta with another physician.

"Dutta presented evidence about the purpose of the requirement in her contract with the hospital that the new medical director be mutually acceptable to both parties. Dutta stated she informed Douglas Stanley, the attorney who represented her in contract negotiations with the hospital, that the new medical director 'has to be compatible, you know, I have to like that person, I should feel comfortable to work with him.' Doug Stanley testified the 'mutually acceptable' language in Dutta's contract referred to 'her entering into a business relationship, a partnership with the person coming in. That was the whole discussion in terms of mutually acceptable. There was never any discussion . . . about medical credentials of the person.' Lynn Zatzkin, a hospital administrator, testified the parties included the phrase 'mutually acceptable' in the contract because '[w]e both agreed that we wanted the person being recruited to be compatible with Dr. Dutta.'

"Dutta admitted she understood her contract with the hospital obligated her to negotiate a business relationship with the new director in good faith. Dutta further indicated it is standard practice among physicians who are establishing business relationships to set up an employer-employee relationship for at least a year before a partnership is formed. Dutta emphasized, however, at the time of the negotiations with the hospital, she had already been employed by Dr. Krause for a year and had discussed forming a partnership with him. Dutta believed, based on her prior year of service

at St. Francis, the new medical director should be required to form a partnership with her immediately.

"The facts regarding Dutta's compensation are these: When Dutta began working at the hospital as an employee of Dr. Krause, her contract provided a salary of $150,000 per year. The August 1988 agreement with the hospital provided Dutta was to receive $2,000 per month from the hospital and be allowed to retain all of the billings she generated through the treatment of patients. Dutta's tax accountant, Gary Freeman, testified Dutta's earnings between August of 1988 and May of 1990 averaged $30,880 per month or $370,560 per year. Dutta's accountant estimated she earned $286,512 during the year she worked at Hutchinson.

"Dr. Carl Bogardus, Chairman of the Department of Radiation Therapy at the University of Oklahoma, testified regarding Dutta's probable loss of future income. Bogardus indicated as a result of her termination, Dutta would suffer approximately $648,480 in lost income. Bogardus' opinion was it would take Dutta at least one year to find comparable employment to that which she had lost at the hospital and during that year she would have no income. In response to a question about Dutta's probable earnings after finding a job, Dr. Bogardus replied:

'Well, it obviously is a steadily increasing number. You start on day one with no income and the income gradually builds up. By the end of your first year you would be making about half your potential income. By the end of the second year you would probably at least be making three-quarters and on into full income by the end of your third year.' "
18 Kan. App. 2d at 246-49.

## Denial of the Due Process Hearing

Count I of Dutta's petition alleged a denial of due process in failing to grant her a hearing under the St. Francis medical staff bylaws. The trial court granted the hospital's motion for summary judgment, dismissing count I before trial. The Court of Appeals observed:

"None of the parties claim any genuine issue of material fact which would bar summary judgment. Whether the bylaws constitute a contract of employment is not an issue in this case as the hospital admits it is bound by its own bylaws. The only issue is whether the hospital bylaws required a hearing before a committee of the medical staff prior to the hospital decision to revoke Dutta's right to use the facilities and equipment of the radiology department." 18 Kan. App. 2d at 249.

The interpretation and legal effect of written instruments are matters of law. *Federal Land Bank of Wichita v. Krug*, 253 Kan. 307, Syl. ¶ 1, 856 P.2d 111 (1993). Our standard of review is unlimited on a question of law. *Gillespie v. Seymour*, 250 Kan. 123, Syl. ¶ 2, 823 P.2d 782 (1991).

St. Francis contended that it could deny Dutta access to equipment without altering her staff privileges; consequently, the due process hearing right was not triggered. 18 Kan. App. 2d at 250.

The Court of Appeals emphasized that Dutta's staff membership remained intact and that the decision to revoke her access to the radiology facilities was purely a business decision. 18 Kan. App. 2d at 251. We agree with the trial court and the Court of Appeals.

The dispute centers around a discussion of the bylaws, Article VII, Section 1(a), which states:

"Section 1. Right to Hearing
a. Any practitioner who receives notice of a recommendation of the Executive Committee or the Board of Directors, if it initiated the recommendation, that will adversely affect his appointment to or status as a member of the Medical Staff or his exercise of clinical privileges will be entitled to a hearing before an ad hoc committee of the Medical Staff, except as otherwise so provided in the Bylaws."

Additionally, Section 1(c) indicates:

"c. All hearings will be in accordance with the procedural safeguards set forth in this Article VII to assure that the practitioner is accorded all rights to which he is entitled."

Section 1(a) sets out two contexts in which a physician will be entitled to a hearing: when a decision adversely affects a physician's status as a member of the medical staff or when a decision adversely affects clinical privileges. Hearings under both situations are expressly controlled by the Article VII procedural safeguards. Because Dutta is still a member of the medical staff, the only question is whether the decision to preclude her from access to the radiology department adversely affects her exercise of clinical privileges.

As St. Francis observes, Article VII, Section 6, entitled "Conduct of Hearing," Subsection (j) states: "The hearing provided for in these Bylaws is for the purpose of resolving, on an intraprofessional basis, matters bearing on professional competency and conduct." Dutta's position would require that Section 6(j) be ignored. Section 6(j) mandates that decisions associated with adverse competency determinations are to be considered in a due process hearing and expressly indicates the intended subject matter: The "hearing provided . . . is *for the purpose* of resolving" professional competency and conduct matters. (Emphasis added.)

Furthermore, Article IV, entitled "Medical Staff Membership Clinical Privileges Status," Section 1 states:

"Section 1. Nature of Medical Staff Privileges
"Membership on the Medical Staff of St. Francis Regional Medical Center is a privilege, and not a right of any practitioner, which shall be extended only to professionally competent practitioners who continuously meet the qualifications, standards, and requirements set forth in these Bylaws, Rules, and Regulations. Appointment to the Staff will confer on the appointee only those clinical privileges granted by the Board of Directors in accordance with these Bylaws, Rules and Regulations."

Clinical facility use is a privilege, not a right. Section 2, entitled "Clinical Privileges Delineation," Subsections (a) and (b) further explain the nature of this privilege and the relationship between medical staff members and hospital administration:

"a. A practitioner may be granted privileges in accordance with these By-laws, Rules, and Regulations and the policies of the Medical Staff and Board of Directors, subject to approval by the Board of Directors. The granting of clinical privileges does not of and by itself constitute membership or eligibility for membership in the Medical Staff. Clinical privileges will be granted and monitored by the Medical Staff of St. Francis Regional Medical Center.
"b. Every practitioner practicing at the Medical Center by virtue of Medical Staff membership or being granted clinical privileges, shall, in connection with such practice, be entitled to exercise only those clinical privileges specifically granted to him by the Board of Directors, except as provided in Section 5 and 6 of this Article."

A grant of medical staff membership does not guarantee a companion grant of clinical privileges. Article IV, Section 3(a) provides further support for this view: "Membership on the Medical Staff of St. Francis Regional Medical Center does not denote the right to exercise the clinical privileges requested."

Dutta indicates that the Court of Appeals ignored the fact that the St. Francis bylaws expressly set forth the limited circumstances in which a practitioner will not have a right to a hearing. She maintains that the Court of Appeals ignored Article VII, Section 1(a) of the bylaws and improperly relied on Article VII, Section 6(j). Dutta asserts that the loss of access to the necessary equipment adversely affects the exercise of her clinical privileges so she must be given a hearing under Article VII, Section 1(a).

Dutta is fearful that the Court of Appeals' reasoning will allow hospitals to fabricate pretextual business justifications to eliminate

practitioners who are not to the hospital's liking. She believes the decision of the Court of Appeals will make it easier for hospitals to avoid complying with the procedural requirements of their bylaws.

St. Francis argues that Dutta invites us to disregard a material provision in the bylaws, Article VII, Section 6(j). The hospital believes that this express provision provides an independent basis for affirming the Court of Appeals' decision.

St. Francis asserts that the Court of Appeals' decision is supported by the distinction between the use of facilities and a grant of clinical privileges. The hospital contends that clinical privileges do not constitute an employment contract or guarantee that a practice will have a guaranteed economic value. Consequently, when St. Francis granted Dr. Tan an exclusive contract, it did not make an adverse decision concerning Dutta's qualifications to have clinical privileges.

*Amicus* The American College of Radiology (ACR) supports Dutta's contentions, asserting that St. Francis' action would adversely affect Dutta's status as a member of the medical staff because she could no longer be active in patient care and could not exercise her clinical privileges. According to ACR, the Court of Appeals' emphasis on the fact that Dutta could still admit patients was "formalism," not reality. No reasonable person would choose to have services ordered by Dutta and performed by the new oncologist and then pay two radiation oncologists rather than one.

ACR reasons that personnel decisions can affect the quality and availability of medical care, regardless of the basis for the decisions. ACR emphasizes that public policy demands that the medical staff be given the opportunity to identify and assess the medical care ramifications of excluding or including particular physicians. ACR argues that the governing board, which normally is comprised of lay persons unschooled in medical science and practice, should have the benefit of the medical staff's expert judgment.

*Amicus* The Kansas Hospital Association supports the arguments advanced by St. Francis.

We believe the bylaws, when considered as a whole, support the conclusion of the Court of Appeals that Dutta was not entitled

to a hearing because the hospital's managerial decision was based on business considerations. The Court of Appeals distinguished a case relied on by Dutta, *Lewisburg Community Hosp. v. Alfredson*, 805 S.W.2d 756 (Tenn. 1991), on the basis that St. Francis' bylaws limit a physician's right to a hearing to those matters bearing on professional competency and conduct. 18 Kan. App. 2d at 253. We agree. The threshold issue in *Lewisburg* was whether the bylaws formed a contract with the plaintiff radiologist as a member of the medical staff. 805 S.W.2d at 759. St. Francis, in the case at bar, has admitted the contractual relationship. We find no reference in *Lewisburg* to a bylaws provision limiting hearings to matters of professional competency. The hospital bylaws in *Lewisburg* were construed to require the hospital to permit the use of certain facilities by physicians granted clinical privileges in a particular specialty. 805 S.W.2d at 761. No such requirement appears in the St. Francis bylaws. The weight of authority supports the conclusion of the Court of Appeals. *Lewisburg* appears to be the only contrary authority. We are unpersuaded by the reasoning in *Lewisburg*. A parallel medical employment issue was recently reviewed in *Bartley v. Eastern Maine Medical Center*, 617 A.2d 1020 (Me. 1992). *Bartley* held that because the staff privileges of the plaintiff emergency department physicians had not been revoked or reduced, the physicians were not entitled to notice and hearing under the hospital bylaws. The physicians in *Bartley* were notified that they could no longer work in the emergency room unless they negotiated new employment contracts with the hospital. The physicians' staff privileges were not terminated when the hospital made different arrangements for staffing the emergency department. The *Bartley* court noted that there is a distinction between a grant of privileges and the right to exercise privileges. *Bartley* found that the hospital bylaws did not apply to the emergency room physicians' terminations because there had been no allegation of unprofessional conduct or privilege reduction. 617 A.2d at 1021. See *Collins v. Associated Pathologists, Ltd*, 844 F.2d 473, 481 (7th Cir.), *cert. denied* 488 U.S. 852 (1988); *Engelstad v. Virginia Mun. Hosp.*, 718 F.2d 262, 268 (8th Cir. 1983); *Lewin v. St. Joseph Hospital of Orange*, 82 Cal. App. 3d 368, 391, 146 Cal. Rptr. 892 (1978); *Anne Arundel Gen. Hosp.v. O'Brien*, 49 Md. App. 362, 371-73,

432 A.2d 483 (1981); *Holt v. Good Samaritan Hosp. & Health Ctr.*, 69 Ohio App. 3d 439, 445-46, 590 N.E.2d 1318, (1990); and *Alder v. Montefiore Hosp. of W. Pa.*, 453 Pa. 60, 80-81, 311 A.2d 634 (1973), *cert. denied* 414 U.S. 1131 (1974).

## The Damage Issue

The Court of Appeals found that the evidence supported Dutta's claim to a damage award. However, the jury's determination as to the amount was rejected, and the case was remanded for a new trial on the issue of damages only. Justices Lockett, Six, and Abbott believe: (1) the jury's award is within the perimeters of the trial testimony; (2) the Court of Appeals has improperly invaded the province of the jury. Chief Justice Holmes and Justices Allegrucci and Davis agree with the analysis of the Court of Appeals. The court is equally divided on the damage issue; consequently, the judgment of the Court of Appeals reversing the judgment of the district court and remanding is affirmed. See *Pierce v. Pierce*, 244 Kan. 246, 247, 767 P.2d 292 (1989).

Judgment of the Court of Appeals affirming in part and reversing in part the district court is affirmed. Judgment of the district court is affirmed in part, reversed in part, and remanded.

McFARLAND, J., not participating.