Michael J. VAN VALKENBURG, M.D., Mark D. Lindquist, M.D., and Daniel S. Hunt, M.D., Plaintiffs and Appellants,

v.

PARACELSUS HEALTHCARE COR-PORATION, Dakota/Champion Partnership, d/b/a Dakota Heartland Health System, Defendants and Appellees

No. 990265.

Supreme Court of North Dakota.

March 3, 2000.

Franklyn G. Gokey, Vogel, Weir, Bye, Hunke & McCormick, Ltd., Fargo, N.D., for plaintiffs and appellants.

Sara Gullickson McGrane, Felhaber, Larson, Fenlon & Vogt, PC, Minneapolis, MN, for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] The plaintiffs, Michael J. Van Valkenburg, Mark D. Lindquist, and Daniel S. Hunt, appealed from a summary judgment dismissing their breach of contract action against the defendants, Paracelsus Healthcare Corporation and Dakota/Champion Partnership, d/b/a Dakota Heartland Health System. We hold the plaintiffs' appeal is not moot, and they have not raised any material issues of fact to preclude summary judgment dismissal of their breach of contract action. We affirm.

I

[¶ 2] The plaintiffs are emergency room physicians who were employees and shareholders of Dakota Clinic, Ltd., in Fargo. The plaintiffs also were medical staff appointees at Dakota Heartland Hospital in Fargo, with clinical privileges for the Hospital's emergency department. The defendants are owners and operators of the Hospital.

[¶ 3] Before February 23, 1998, the plaintiffs provided physician services at the Hospital's emergency department. In 1997, Dakota Clinic announced it would build a competing hospital with an emergency department in Fargo. The defendants subsequently contracted with EMCARE for exclusive physician services at the Hospital's emergency department after February 23, 1998. The defendants informed the plaintiffs that physician staff coverage at the Hospital's emergency department would be handled by EMCARE, effective February 23, 1998, and the plaintiffs' "medical staff privileges will continue, however, to the extent that you wish to exercise your privileges, arrangements will have to be made through EMCARE." The plaintiffs did not affiliate themselves with EMCARE, and after February 23, 1998, they were not assigned staff coverage at the Hospital's emergency department.

[¶ 4] The plaintiffs sued the defendants, alleging the defendants' conduct in barring the plaintiffs from the Hospital's emergency department (1) breached the Hospital's medical staff bylaws and effectively revoked the plaintiffs' medical staff and clinical privileges at the Hospital, (2) violated "open medical staff provisions" of a partnership agreement between Dakota Medical Foundation and Paracelsus, and (3) violated the hearing and due process provisions of the Hospital's medical staff bylaws. The plaintiffs sought to enjoin the defendants from violating the Hospital's medical staff bylaws and to require the defendants to permit appropriately credentialed members of the Hospital medical staff to continue to exercise their medical staff privileges. The plaintiffs also sought damages in excess of $50,000.

[¶ 5] The plaintiffs sought a temporary restraining order and a temporary injunction to preclude the defendants from excluding the plaintiffs from the Hospital's emergency department. The district court

issued a temporary restraining order allowing the plaintiffs to work at the Hospital's emergency department. After a hearing, the court rescinded the temporary restraining order and denied the plaintiffs' motion for a temporary injunction, ruling they had not shown irreparable injury, in part, because they had failed to show money damages were an inadequate remedy.

[¶ 6] The defendants thereafter moved for summary judgment, conceding for purposes of their motion that the Hospital's medical staff bylaws constituted a contract, but arguing they had not breached the contract. While the summary judgment motion was pending, the defendants terminated their exclusive contract with EMCARE, effective December 31, 1998. The plaintiffs moved to reopen the summary judgment proceeding and to compel the defendants to respond to discovery requests, claiming the applicable law had changed after the defendants terminated the exclusive contract with EMCARE. The plaintiffs claimed the defendants' contract with EMCARE was an intermediate step to allow the defendants to staff the Hospital's emergency department with Hospital physicians and to exclude the plaintiffs from the emergency department. The defendants responded the law was the same whether they exclusively contracted with EMCARE, or with individual physicians to staff the emergency department. After the court conducted an in camera review of documents, the court refused to compel further discovery, but permitted the parties to file additional briefs regarding the defendants' termination of their contract with EMCARE.

[¶ 7] The district court thereafter granted summary judgment dismissing the plaintiffs' action. The court decided the defendants' exclusive contract with EMCARE was not a sham or an intermediate step to staff the Hospital's emergency department with Hospital physicians. The court said whether the defendants contracted with EMCARE or directly with individual physicians did not change the applicable law. Section 3.8 of the medical staff bylaws provides:

3.8 ATTENDANCE OF PATIENTS. Appropriately credentialed Staff appointees have the right to attend patients or consult with other appropriately credentialed Staff appointees even if such physician services are contracted by the Hospital.

The court concluded Section 3.8 was unambiguous and interpreted it to allow the defendants to enter into exclusive contracts for the Hospital's emergency department while permitting the plaintiffs to attend patients who presented at the emergency department and asked to see one of the plaintiffs. The court decided the defendants had not prevented the plaintiffs from attending patients who presented at the Hospital emergency department and asked to see one of the plaintiffs. The court also concluded the defendants did not violate the hearing and due process provisions of the medical staff bylaws, because the plaintiffs' staff privileges were not canceled or curtailed for disciplinary reasons.

[¶ 8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The plaintiffs' appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–02.[1]

## II

[¶ 9] The defendants argue the plaintiffs' appeal is moot, because the

1. No formal judgment was entered, and the plaintiffs appealed from the "Memorandum Opinion and Order Granting Defendants' Motion for Summary Judgment." Although an order granting summary judgment is generally not appealable, we will treat it as an appealable final order where, as here, it was obviously intended to be final. *E.g., Keator v. Gale*, 1997 ND 46, ¶ 5 n. 2, 561 N.W.2d 286 (treating order granting summary judgment as appealable final order where order was obviously intended to be final).

plaintiffs have all voluntarily resigned their medical staff privileges at the Hospital. The defendants argue the plaintiffs' appeal will not provide them effective relief, because a favorable decision will not enable them to practice at the Hospital's emergency department without renewing their privileges.

[¶ 10] In *Nord v. Herrman*, 1998 ND 91, ¶ 12, 577 N.W.2d 782 (citations omitted), we outlined our framework for analyzing mootness claims:

> This Court cannot render advisory opinions. The premise behind the prohibition of advisory opinions is there must be an actual controversy to be determined before a court can properly adjudicate. An actual controversy does not exist when an issue has been mooted by a lapse of time, or the occurrence of related events which make it impossible for a court to render effective relief. Nevertheless, an issue technically moot will not be considered moot if it is capable of repetition yet evading review, or if the controversy is one of great public interest and involves the power and authority of public officials.

■ [¶ 11] Here, the plaintiffs' complaint sought injunctive relief and damages in excess of $50,000. A viable damage claim defeats a mootness challenge. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 478 n. 1, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989); *Deakins v. Monaghan*, 484 U.S. 193, 201, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988); *Board of Pardons v. Allen*, 482 U.S. 369, 370–71 n. 1, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); *Powell v. McCormack*, 395 U.S. 486, 495–500, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). *See generally* 13A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3533.3 p. 262 (1984). The defendants' reliance on other "employment" cases to support their mootness argument is misplaced, because those cases do not involve claims for damages. *See Beattie v. United States*, 949 F.2d 1092, 1093 (10th Cir.1991); *State ex rel. Stephan v. Johnson*, 248 Kan. 286, 807 P.2d 664, 666 (1991); *In re Moriarty*, 156 Vt. 160, 588 A.2d 1063, 1064–65 (1991); *Smith v. Board of Cty. Comm'rs*, 891 P.2d 88, 92 (Wyo.1995).

[¶ 12] Relying on *Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997), the defendants argue the plaintiffs' claim for damages does not preclude dismissal on mootness grounds. In *Arizonans*, the United States Supreme Court considered a mootness claim in an Arizona state employee's First Amendment challenge under 42 U.S.C. § 1983 to Arizona's state constitutional provision declaring English to be the official state language for all government functions and actions. The state employee sought injunctive and declaratory relief, counsel fees, and " 'all other relief that the Court deems just and proper under the circumstances.' " *Arizonans*, 520 U.S. at 50–51, 117 S.Ct. 1055, 137 L.Ed.2d 170. After the state employee voluntarily quit her job and became employed in the private sector where her speech was not governed by the state constitutional provision, the lower courts decided her claim for " 'all other relief that the Court deems just and proper' " justified an award of $1 in nominal damages against the state and precluded a mootness determination.

[¶ 13] The United States Supreme Court said the former state employee's claim for nominal damages did not lie against the state, because states are not amenable to suits for damages under 42 U.S.C. § 1983. *Arizonans*, 520 U.S. at 69, 117 S.Ct. 1055, 137 L.Ed.2d 170, *citing Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The Supreme Court said a "claim for nominal damages, extracted late in the day from [the plaintiff's] general prayer for relief and asserted solely to avoid otherwise certain mootness, bore close inspection," and

held the case was moot because the employee had voluntarily quit her state job and her damage claim was nonexistent. *Arizonans,* at 71–72, 117 S.Ct. 1055, 137 L.Ed.2d 170.

[¶ 14] The defendants' reliance on *Arizonans* is misplaced. Here, in addition to injunctive relief, the plaintiffs' complaint specifically sought more than $50,000 in damages for the alleged breach of the Hospital's medical staff bylaws. The plaintiffs' claim for damages is not derived from their general prayer for relief and involves more than a claim for nominal damages against a party not amenable to a suit for damages.

[¶ 15] The defendants nevertheless argue the plaintiffs "have produced no evidence of any damages, nor do they have any as it is undisputed their employer paid them their salaries and gave them employment in the Dakota Clinic Urgent Care Center after the Hospital began its contract with EMCARE."

[¶ 16] The defendants' argument is contrary to their position in opposition to the plaintiffs' request for a temporary injunction. In that context, the defendants argued the plaintiffs were not entitled to a temporary injunction because they had an adequate remedy in the form of money damages. The district court denied the plaintiffs' request for a temporary injunction, in part, because they had failed to show money damages were an inadequate remedy. Moreover, this case was decided in the posture of summary judgment on the issue of liability, and the defendants have not drawn our attention to relevant evidence in the record showing there is no issue of material fact about damages. *See Hurt v. Freeland,* 1999 ND 12, ¶ 8, 589 N.W.2d 551 (a party seeking summary judgment bears initial burden of showing no genuine issue of material fact). If the plaintiffs prevail on their liability arguments, they may· be entitled to damages

for breach of contract. The plaintiffs' breach of contract claim for damages represents an actual controversy for which effective relief can be rendered, and we hold the plaintiffs' appeal is not moot.

III

[¶ 17] We consider the merits of the plaintiffs' appeal in the posture of summary judgment, which is a procedure for promptly and expeditiously disposing of an action without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving the factual disputes will not alter the result. *DeCoteau v. Nodak Mut. Ins. Co.,* 2000 ND 3, ¶ 7, 603 N.W.2d 906. In considering a motion for summary judgment, a court views the evidence in the light most favorable to the party opposing the motion, and gives that party the benefit of all favorable inferences. *Hurt,* 1999 ND 12, ¶ 7, 589 N.W.2d 551. A party seeking summary judgment bears the initial burden of showing there is no genuine issue of material fact. *Id.* at ¶ 8. A party resisting summary judgment may not rely simply upon the pleadings or upon unsupported, conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact, and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. *Id.*

IV

A

[¶ 18] The plaintiffs argue the district court erred in construing Section 3.8 of the medical staff bylaws, which provides "[a]ppropriately credentialed Staff appointees have the right to attend patients or consult with other appropriately credent-

ialed Staff appointees even if such physician services are contracted by the Hospital." The plaintiffs argue the court failed to interpret Section 3.8 to give effect to the parties' mutual intention at the time of contracting. The plaintiffs argue extrinsic evidence establishes Section 3.8 was adopted to prevent the defendants from excluding medical staff, including emergency department physicians, from exercising their medical staff privileges. The plaintiffs argue Section 3.8 is ambiguous and summary judgment was inappropriate.

[¶ 19] The district court decided the plaintiffs' interpretation of Section 3.8 was not reasonable, and concluded the provision unambiguously allowed the defendants to enter into exclusive service contracts for the emergency department while ensuring medical staff privileges were not revoked on that basis. The court construed the provision to allow physicians with medical staff and clinical privileges to attend patients who presented at the emergency department and who asked to see that physician. The court concluded the defendants did not breach the medical staff bylaws either by entering into an exclusive contract with EMCARE or by contracting directly with individual physicians to provide staff coverage at the Hospital's emergency department.

[¶ 20] In *Lire, Inc. v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 433–34 (N.D.1995) (citations omitted), we outlined relevant rules for construing written contracts:

> The construction of a written contract to determine its legal effect is a question of law. Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. The parties' intention must be ascertained from the writing alone if possible. A contract must be construed as a whole to give effect to each provision, if reasonably practicable. We construe contracts to be definite and capable of being carried into effect, unless doing so violates the intention of the parties. Unless used by the parties in a technical sense, words in a contract are construed in their ordinary and popular sense, rather than according to their strict legal meaning.

> If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language. However, if a written contract is ambiguous, extrinsic evidence may be considered to show the parties' intent. Whether or not a contract is ambiguous is a question of law. An ambiguity exists when rational arguments can be made in support of contrary positions as to the meaning of the language in question.

[¶ 21] When read as a whole, Section 3.8 does not prohibit the Hospital from contracting for physician services for a department; rather, it specifically contemplates the Hospital may contract for physician services. The first clause of Section 3.8 gives appropriately credentialed staff appointees "the right to attend patients or consult with other appropriately credentialed" staff appointees, and when read in conjunction with the second clause, recognizes those physicians retain the right to attend patients "even if such physician services are contracted by the hospital." The plaintiffs' interpretation of Section 3.8 ignores the second clause of that provision. Section 3.8 plainly and unambiguously contemplates physicians with medical staff appointment and appropriate clinical privileges retain their right to attend patients even if the Hospital contracts for physician services, including physician services in the emergency department.

[¶ 22] A physician's "right to attend patients" depends on the physician's patients, which hinges on the physician's clinical privileges. Here, the plaintiffs'

clinical privileges were for the Hospital's emergency department, and we agree with the district court's conclusion the plaintiffs' "right to attend patients" in Section 3.8 must be read in the context of an emergency department physician's right to attend patients. Patients receiving treatment at an emergency department typically do not schedule an appointment to see a specific emergency department physician, and emergency department physicians do not have their own patients in the same sense as a clinic-based family practitioner. Rather, emergency department physicians treat patients who present at the emergency department and require treatment. The issue in this case ultimately turns on the responsibility for staff coverage at the Hospital's emergency department. Section 3.8 does not require the defendants to assign plaintiffs staff coverage for the emergency department, and the plaintiffs have cited no provisions of the medical staff bylaws requiring the defendants to assign them staff coverage in the Hospital's emergency department. The grant of medical staff appointment and clinical privileges is not synonymous with the unlimited exercise of those privileges. *See Engelstad v. Virginia Mun. Hosp.,* 718 F.2d 262, 268 (8th Cir.1983); *Dutta v. St. Francis Reg. Med. Ctr., Inc.,* 254 Kan. 690, 867 P.2d 1057, 1062–63 (1994); *Bartley v. Eastern Maine Med. Ctr.,* 617 A.2d 1020, 1022–23 (Me.1992); *Holt v. Good Samaritan Hosp. and Health Center,* 69 Ohio App.3d 439, 590 N.E.2d 1318, 1323 (1990).

[¶ 23] We construe the plain and unambiguous language of Section 3.8 to give physicians with medical staff appointment and clinical privileges at the Hospital the right to attend patients even if the Hospital contracts for physician services for a department, and in the context of emergency department physicians, permits the plaintiffs to attend patients who present at the emergency department and ask to see

one of the plaintiffs. We therefore conclude the district court did not err in deciding Section 3.8 was unambiguous and construing that provision without the aid of extrinsic evidence.

**B**

[¶ 24] The plaintiffs argue the district court erred in deciding the defendants did not breach Section 3.8. The plaintiffs argue there is a factual dispute about whether they were prevented from seeing patients who presented at the Hospital's emergency department and asked to see one of the plaintiffs.

[¶ 25] A party seeking summary judgment bears the initial burden of showing there is no genuine issue of material fact. *Hurt,* 1999 ND 12, ¶ 8, 589 N.W.2d 551. A party resisting a summary judgment motion may not simply rely upon pleadings or upon unsupported, conclusory allegations, but must present competent admissible evidence that raises an issue of material fact, and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. *Id.* Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Engel v. Montana Dakota Utilities,* 1999 ND 111, ¶ 7, 595 N.W.2d 319.

[¶ 26] The Hospital's written policy for physician coverage at the emergency department states, "[a]ll patients presenting to the Department will be seen by the on-duty emergency physician unless the patient or patient's primary physician have made other arrangements," and requires the emergency department nursing staff to notify the appropriate physician within 15 minutes. The Hospital's procedure for admitting and discharging patients in the emergency department states, "[t]he ED physician on duty will see all patients un-

less there have been prior arrangements made for another physician to see the patients." The defendants submitted an October 1998 affidavit of Susan Oemichen, the Hospital's director of outpatient and emergency department services, stating:

3. Patients receiving treatment in the Emergency Department are treated by the physician on duty when the patient arrives in the Emergency Department.

4. Patients receiving treatment in the Emergency Department do not schedule appointments to see a specific physician.

5. Physicians in the Emergency Department do not have their own patients. Rather, they treat any patient who arrives in the Emergency Department requiring treatment.

. . . .

8. If a patient would contact any physician, including plaintiffs, requesting the physician meet him or her at the DHHS Emergency Department, the patient would be allowed to see the physician. The physician would need only to notify the Emergency Department in advance, reporting that the physician will be seeing the patient in the Emergency Department.

The defendants also submitted Oemichen's February 1999 affidavit, averring the Hospital's emergency department policy was to call physicians to see patients when necessary, none of the plaintiffs had made arrangements to see patients in the Hospital's emergency department, and she had inquired of the Hospital's emergency department staff and had not been informed of any specific instances where a patient asked to see one of the plaintiffs in the Hospital's emergency department.

■ [¶ 27] The plaintiffs each submitted an affidavit stating "to the best of my knowledge and belief" that "I am currently not permitted by [the Hospital] to see any of my patients in the [Hospital] Emergency Department, even if they request to meet me there, while at the same time [the Hospital] claims not to have limited my Medical Staff Privileges." A February 1999 affidavit of Dr. Lindquist states, "I understand that I am not permitted by [the Hospital] to see any of my patients in the [Hospital] Emergency Department, even if they request to meet me there. I am not permitted to bring my patients to the [Hospital] Emergency Department." The plaintiffs' affidavits do not set forth any facts based on personal knowledge sufficient to raise genuine issues of material fact to defeat summary judgment. A party resisting summary judgment must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact, and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. *Hurt*, 1999 ND 12, ¶ 8, 589 N.W.2d 551. When no pertinent evidence on an essential element is presented to the trial court in resistance to summary judgment, it is presumed no such evidence exists. *Kummer v. City of Fargo*, 516 N.W.2d 294, 297 (N.D.1994). The plaintiffs' affidavits are insufficient to raise a disputed issue of material fact that the defendants prevented the plaintiffs from attending patients who presented at the Hospital's emergency department and asked to see one of the plaintiffs.

■ [¶ 28] The plaintiffs also argue there is a disputed factual issue about a July 1998 incident in which Dr. Lindquist saw a patient at Dakota Clinic Urgent Care. Dr. Lindquist's affidavit stated:

On or about July 11, at around 5 p.m., I had a patient in the Dakota Clinic Urgent Care Department with a TIA and who needed a CAT Scan on her head. The Dakota Clinic CAT Scan was temporarily unavailable. I therefore attempted to order a CAT Scan for the

patient at DHHS. This is ordinarily something I would be able to do in my capacity as an emergency room doctor in the DHHS Emergency Department. I was told that I could not order any tests at DHHS. I was told I would have to send the patient to the DHHS emergency room to have a DHHS emergency room physician see the patient. I was advised that I was not allowed to bring the patient to the emergency room myself to use its facilities for my patient.

[¶ 29] Dr. Lindquist's affidavit unequivocally establishes the patient did not present at the Hospital's emergency department and ask to see Dr. Lindquist. Rather, Dr. Lindquist's affidavit establishes this incident was an attempt to use hospital equipment for a patient at a different facility who did not present at the Hospital's emergency department. Dr. Lindquist's affidavit does not raise a genuine issue of material fact under Section 3.8 of the medical staff bylaws. We conclude the plaintiffs failed to raise a disputed issue of material fact that the defendants violated Section 3.8 of the medical staff bylaws.

## V

■ [¶ 30] The plaintiffs argue their medical staff privileges were modified and limited without following the hearing and due process requirements in the medical staff bylaws. The district court decided the hearing and due process requirements were not implicated, because the plaintiffs' medical privileges were not canceled or curtailed for disciplinary reasons.

[¶ 31] Section 5.7 of the medical staff bylaws says, "[u]pon review and recommendation of the Credentials Committee, the Medical Executive Committee may recommend a change in the clinical privileges . . . of an appointee." Article VI of the medical staff bylaws outlines procedures for "corrective action" and incorpo-

rates provisions for "hearing and appellate review" of an adverse action. Under Section 6.1.1 of the bylaws, criteria for initiation of corrective action includes conduct

(a) detrimental to patient safety or to the delivery of quality patient care within the Hospital, (b) contrary to the Hospital's policies and procedures applicable to patient care, or the Medical Staff bylaws and rules or regulations, (c) disruptive to the operation of the Hospital, (d) unprofessional, or (e) below applicable professional standards.

The procedures for "hearing and appellate review" are for the purpose of "intra-professional resolution of matters bearing on professional conduct, professional competency, or character."

[¶ 32] Relying on *Lewisburg Community Hosp. v. Alfredson*, 805 S.W.2d 756 (Tenn.1991), the plaintiffs argue the defendants breached the medical staff bylaws by not adhering to the due process and hearing provisions. In *Alfredson*, 805 S.W.2d at 761, the court held a hospital's termination of a radiologist's exclusive contract and denial of access to hospital equipment and staff "significantly reduced" the radiologist's privileges. The court held the hospital breached its contract by failing to provide the radiologist a hearing under the medical staff bylaws. *Id.*

■ [¶ 33] The majority of courts, however, have rejected the rationale of *Alfredson* and have held hearing and due process provisions in similar medical staff bylaws are not implicated unless there are allegations against a physician bearing on professional competency and conduct. *See Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 481 (7th Cir.1988); *Engelstad*, 718 F.2d at 268; *Bryant v. Glen Oaks Med. Ctr.*, 272 Ill.App.3d 640, 208 Ill.Dec. 928, 650 N.E.2d 622, 629–30 (1995); *Dutta*, 867 P.2d at 1062–63; *Bartley*, 617 A.2d at 1023; *Holt*, 590 N.E.2d at 1323; *Gonzalez v. San Jacinto Methodist Hosp.*,

880 S.W.2d 436, 440 (Tex.Ct.App.1994). We agree with the majority of courts, and we hold the hearing and due process provisions of the Hospital's medical staff bylaws are not implicated unless there are allegations bearing on professional competency, conduct, or character.

[¶ 34] Here, the plaintiffs' medical privileges were not revoked or suspended, and there were no allegations bearing on professional competency, conduct, or character. Rather, the plaintiffs were not assigned staff coverage in the Hospital's emergency department. The right to exercise medical privileges is separate from the granting or revoking of those privileges, and a physician with privileges is not guaranteed employment or the free and unfettered right to use a facility to exercise those privileges. *See Engelstad,* 718 F.2d at 268; *Dutta,* 867 P.2d at 1062–63; *Bartley,* 617 A.2d at 1022–23; *Holt,* 590 N.E.2d at 1323. We conclude, as a matter of law, the hearing and due process provisions of the Hospital's medical staff bylaws were not implicated in this case.

## VI

[¶ 35] The plaintiffs argue the district court erred in denying them further discovery after the defendants terminated their contract with EMCARE. The plaintiffs claim there is a factual dispute about who provided emergency department services after the defendants terminated the exclusive contract with EMCARE, and a different body of law may apply depending on the entity providing those services.

[¶ 36] The district court gave the plaintiffs the opportunity to brief the applicable law, and they cited no authority in the district court to support their claim that a different body of law applies depending on the entity or individuals providing the Hospital with emergency department services. The district court decided that whether the defendants contracted with EMCARE or directly with individual physicians did not change the applicable law, and the plaintiffs have cited no authority in this Court to support their claim that a different body of law applies. Under these circumstances, we conclude the court did not abuse its discretion in denying further discovery.

## VII

[¶ 37] We affirm the summary judgment.

[¶ 38] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN and MARY MUEHLEN MARING, JJ., and GERALD G. GLASER, S.J., concur.

[¶ 39] GERALD G. GLASER, S.J., sitting in place of KAPSNER, J., disqualified.